"Know all men, etc., that we John McRae, Robert Campbell, etc., all of Cumberland County, are held and firmly bound unto John Dickson, Esquire, chairman of the county court of Cumberland, in the sum of £ 5,000 currency, payable to the said chairman or his successors in office, to which payment well and truly to be made," etc.
The condition of the bond was in these words, viz.:
The condition of the above obligation is such that whereas the above bounden John McRae hath this day, by the justices of the county aforesaid been duly elected and appointed high sheriff of said (286) county: Now, if the said John McRae shall well and truly account for and pay into the hands of the county trustee for the time being all such sum or sums of money as may be or shall come into his hands, or which he ought to collect for the use of said county, and in all things comply with the acts of the General Assembly in such case made and provided, then the above obligation to be void; otherwise, to remain in full force and virtue.
The defendant pleaded that the conditions had been performed; and plaintiff, in his replication, assigned as a breach that John McRae had received $396 of the tax which had been assessed for the repairs of the public buildings of the county, and that the said sum was yet due to the treasurer of public buildings and not paid.
To this replication there was a demurrer and joinder in demurrer.
It was admitted by the plaintiff that the county trustee had received all the public money payable to him, unless he was authorized to receive the aforesaid sum of $396.
The presiding judge overruled the demurrer and gave judgment for the plaintiff; and it was agreed between the parties that should this Court sustain the demurrer, then, to prevent circuity of action, the parties submitted a case similar in all respects to the foregoing except *Page 154 
that the breach assigned was the nonpayment of the $396 to the county trustee; and further, that should the demurrer in the first case be sustained, the parties agreed that the writ and declaration might be amended by substituting the name of the — county trustee for that of the treasurer of public buildings.
The question presented in this case is, whether the breach is properly assigned in the declaration, in stating that the sum due has not been paid to the treasurer of public buildings. The defendants contend that the stipulation of the bond is that the moneys (287) collected by the sheriff should be paid to the county trustee, and to no other person; and that they as securities to the sheriff cannot be justly chargeable beyond or in a different manner from their engagement. In 1798 the Legislature, under a belief, as stated in the preamble of the act that there was no law then in force to compel the sheriffs, or any other person to give bond and sufficient security for the collection of the county and poor tax, passed an act, chapter 509, making it the duty of every sheriff thereafter appointed to enter into bond, with sufficient security, payable to the chairman of the court and his successor in office, for the due collection and accounting for the county and poor tax, as well as the public tax. When this act was passed there were in force three laws authoring the county courts to lay a tax for the purposes of the public buildings. By the Laws 1741, ch. 33, the tax was to be laid for two years, and to be collected by the sheriff in the same manner with all other public and parish taxes, and to be accounted for by him to the justices of the county court on oath. Viewing the first section of this act by itself, it would seem that this tax was only temporary, and to be laid at once for two years. But the second section of the act removes this idea for by that the justices are empowered to lay a tax of the same character, viz., a poll tax from time to time, as often as it might be necessary to repair or erect public buildings. This authority is repeated and confirmed by Laws 1795, ch. 433, by which the taxes are to be laid and collected annually. And by the same act a treasurer of public buildings is directed to be appointed, who, amongst other duties, is to call upon former commissioners who may have received moneys for the aforesaid purposes. From these two acts it results that it was the duty of the sheriff to collect the taxes for public buildings before 1798, and he was accountable for them to the county trustee by the express (288) terms of Laws 1777, ch. 127. It was probably intended by the act of 1795 before cited, to make him accountable to the treasurer of public buildings, but such intention is but obscurely expressed, and *Page 155 
could not safely be assumed. But it certainly would have been a less complicated mode of settlement than to make him first pay the county trustee, and then the latter the treasurer of public buildings. As to the construction of the act of 1798, it seems, from the second section, that the sheriff was to account with the county trustee and the wardens, because he is allowed the same commissions with them as in the settlement of his public accounts with the treasurer. The county trustee is in this act called, I believe for the first time, the county treasurer, but the former is evidently meant, because the same appellation is used in some subsequent acts in relation to duties exclusively belonging to the county trustee. The terms employed in the act, "county tax," signify every sort of tax levied for county uses in contradistinction to the taxes levied for the use of the State by the public revenue laws; and if the condition of this bond had been drawn in the very terms of the act it would certainly have bound the sheriff to collect and account for the taxes laid for the public buildings. This brings me to Laws 1808, ch. 755, by which the sheriff is again authorized to collect the tax for public buildings, and is for the first time made accountable to the treasurer of public buildings, against whom he is entitled to the same commissions as he was before against the county treasurer and county wardens. It may be observed here, in passing, that the treasurer of public buildings is contrasted with the county treasurer, by which it is plain that the county treasurer is meant by the latter. This act was in force when the bond was given, and for a long time previous, and it was in the power of any person becoming security for the sheriff, by an inspection of the law, to ascertain to whom he was accountable for this portion of the tax, and the extent of his liability. It was undoubtedly (289) competent for the Legislature to change from time to time the mode of the sheriff's accountability without impairing the force or effect of the bond required by the act of 1798; and the sheriff being liable to account for all he collected for county use it could be but a shadowy difference to the securities whether he were bound to pay it to the trustee and wardens, or a portion of it to the treasurer of public buildings. The breach must necessarily be assigned according to the truth of the case; and a bond conditioned to account with the county treasurer would not be forfeited by a failure to account with the treasurer of public buildings. But if the condition were to account generally, the breach would be properly assigned according to the manner in which the sheriff was liable by law; prout lexpostulat. If the question, however, is considered on the words of the bond, they will, without any strained interpretation, provide for the case as it was intended by Laws 1808, ch. 755. The condition contains two distinct undertakings: the one is that the sheriff shall well and truly account for and pay into the hands of the county trustee, *Page 156 
for the time being, all such sums of money as may be or shall come into his hands, or which he ought to collect for the use of the county. The other is that he will in all things comply with the acts of the General Assembly in such cases made and provided. The first branch clearly provides for all the duties imposed on the sheriff in relation to the county trustee. Nothing could be added to it to make the obligation more distinct; it is complete in itself. If, then, the second branch is construed to import only the same thing with the first, it would have been inserted in vain, and is insignificant and superfluous. But as the acts of Assembly prescribe other duties to the sheriff, such as accounting with the county wardens and the treasurer of public buildings, if this clause be construed to embrace those duties, it becomes useful and sensible; it would be against all just construction not so to construe it. (290) The word "such" I understand as relating to any act of Assembly making the sheriffs responsible for any portion of the county tax to any other person besides the county trustee. From this reasoning it seems to me to follow that it was the intention of the parties to enter into the bond prescribed by the act of 1798, but so altered in its phraseology as to provide for the changes in the sheriff's accountability which laws subsequently passed might have introduced. I think there should be judgment for the plaintiff.